McCARTY (McCLANAGHAN v.). See Case No. 8,690.

## Case No. 8,685.

### McCARTY v. MANN et al.

[2 Dill. 441.] [1]

Circuit Court, D. Minnesota. 1873.[2]

PUBLIC LANDS — POWER OF CONGRESS — RE-IN-STATEMENT OF CANCELLED ENTRY BY CONGRESS — EFFECT—ACT JULY 27, 1854, CONSTRUED.

1. Congress has power to re-instate an entry of public lands which has been cancelled by the commissioner of the general land office, and to provide that this shall be done as of the date of the original entry, so that it shall inure to the benefit of the grantees of the person who originally made the entry.[2]

2. Under such a provision the re-instated entry of the land inures to the benefit of such grantees, irrespective of the fact whether they were grantees with or without warranty.[2]

[Cited in Dunn v. Barnum, 2 C. C. A. 265, 51 Fed. 358.]

This is a bill in equity to quiet title [by William M. McCarty against Charles A. Mann and others], and involves the validity and construction of an act of congress approved July 27th, 1854 (10 Stat. 798). This act is as follows: "Be it enacted, &c., that the entry by Peter Poncin of the north half of the south-east quarter, &c., sec. 36, &c., cancelled by the commissioner of the general land office, be and the same is hereby allowed and reinstated as of the date of the said entry, so that the title to the said lands may inure to the benefit of his grantees as far as he may have conveyed the same;" then follows a proviso that Poncin shall make payment therefor at the land office, and "thereupon a patent shall issue in the name of the said Peter Poncin for said lands." On the 13th of February, 1850, Peter Poncin located a land warrant on the land described in the act. On March 28th, 1850, he conveyed the same by warranty, for the consideration of $150, to one Pepin, and Pepin, on March 29th, 1850, conveyed by warranty to French, and French, in consid-

eration of $500, on March 29th, 1851, conveyed by quit claim to Elfelt. On the 10th day of March, 1852, the commissioner of the general land office cancelled the location of Poncin. On the 13th day of October, 1853, Elfelt conveyed to Van Etten. The title then stood in Van Etten at the date of the afore-mentioned act of July 27th, 1854. On the 31st day of October, 1854, Poncin paid for the land at the land office, and on the 24th day of March, 1855, received a patent under and reciting the said act of July 27th, 1854. The defendants claim under the said deed of March 29th, 1851, from French to Elfelt. After the patent to Poncin was issued, viz., on the 14th day of January, 1856, French made another deed by quit claim to one Furber, and it is under this deed that the plaintiff claims title. Neither party is in possession. The land was laid out in July, 1855, as "Robinson & Van Etten's addition to St. Paul," and is now of great value.

W. H. McCarty and Gilman, Clough & Wilde, for plaintiff.

Geo. L. Otis, for defendants.

Before DILLON, Circuit Judge, and NELSON, District Judge.

DILLON, Circuit Judge. The location of Poncin was cancelled by the commissioner because it was made on land which had been duly reserved from sale as school land, and the government, by the second section of the act of July 27th, 1854, granted to the territory of Minnesota for school purposes other lands in the place of those which by that act it was authorized to be patented to Poncin. The act of July 27th, 1854, validated, on condition of payment, the entry of Poncin which had been cancelled, and declared that the said entry should be "allowed and reinstated as the date of the said entry," which was February 13th, 1850. The act declared one purpose for which this was done to be "that the title to the said land should inure to the benefit of the grantees of Poncin as far as he may have conveyed the same." The condition of payment to the government was subsequently complied with.

It is, in our opinion, too plain to admit of fair controversy that congress had the power to reinstate the entry, and to declare the terms on which it would do so. It was the land of the general government, and under the absolute disposal of congress. It saw fit to dispose of it for the benefit of Poncin and his grantees, one of whom was Van Etten. French having before that time conveyed to Elfelt, the grantor of Van Etten, had no longer any interest in the land, and could derive no benefit from the act. In 1856, when he made the quit claim to Furber, under which the plaintiff claims he had no interest in the land, and consequently conveyed none. We are unable to see any ground on which the plaintiff can rest. He claims under a deed made long

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.

[2] [Affirmed in 19 Wall. (86 U. S.) 20.]

after the act of 1854. Neither he nor French, under whom he claims, had any interest in the land when that act was passed. He insists that the land was solely that of the government, and how he can question the right of the sovereign to dispose of its land as it may see fit, and its action in recognizing equities in the grantees of Poncin, we confess we have been unable to discover. His counsel's argument rests upon the assumption that Poncin became the absolute owner in his own right by the patent in 1855; that no precedent equities existed, or could by congress be recognized to exist, and that the title under the act inured only to the grantees of Poncin, who held by deeds of warranty. Such a construction would defeat the manifest intention of the act.

By the construction for which the plaintiff contends the act was passed for, or inured to, the benefit of French, although he had on the 19th day of April, 1850, made a bond for a deed to Elfelt, which was recorded, and although he had on March 19th, 1851, for a valuable consideration, conveyed by a deed which was also on record, all his interest in said lands to Elfelt. It is utterly inconceivable that congress intended the act for the benefit of French. It was intended for the benefit of the owners under Poncin, and the owner at the time of its passage was Van Etten, the grantee of Elfelt. The bill must be dismissed. Bill dismissed.

[Subsequently this case was taken on appeal to the supreme court, where the decree of the circuit court was affirmed. 19 Wall. (86 U. S.) 20.]